Our next case for argument is 22-1765, Volvo Penta of the Americas versus Brunswick Corporation. Mr. Alamani? Yes. Please proceed. Very good. May it please the court. The board erred here by ignoring much of the evidence that Volvo Penta proffered in this case, and then they compounded that error by evaluating that evidence piece by piece in isolation rather than looking at the complete record. And because of those errors, the board's decision should be vacated, and the case remanded to the board for further proceedings. So under the intelligence biases case, which we cited at page 15 of our opening brief, the board is required to look at all the evidence in the case, both the evidence that supports its findings and the evidence that weighs against its findings. The board didn't do that in this case. We pointed out that error. Also, it looked at all the evidence. It found some evidence of copying and some evidence of some other secondary considerations, but found they weren't coextensive with the claims. Yes, that's true. There were findings on that, and I can address the coextensiveness as well. But as far as the evidence that they ignored, there were three categories of evidence that they completely ignored. They ignored the crusty drive, the demonstrative. They said it didn't support the case for obviousness, and so they wouldn't rely on it. What we argued is that it actually weighed against obviousness, but they ignored it for that purpose. There was the complexity, the sheer number of changes, modifications that needed to happen to the drive. The board found that that was irrelevant, that there was nothing that suggested that they should look at that as part of the obviousness case. And in fact, Brunswick noted that the board found that that was irrelevant. They also looked at the actual reason why the parties, Brunswick and Bulver, were competitors. The board looked at the reason why, or considered the reason why, the stern drive was actually reversed. So they had the motivation that they found in the Cheek Eye for reference. You don't want to address my question about coextensiveness? Oh, I'm sorry. I was trying to address your question about, didn't they address the evidence? But I'm happy to go to that. So as far as coextensiveness, what they said was that we didn't properly put coextensiveness in the record to begin with. And then they said, after consideration of the evidence, that there wasn't coextensiveness. And so the first part is wrong. We did say that the invention was coextensive. There's nothing in the patent application, 692, that's an issue here that's unclaimed. I'm looking at Appendix 67. Yes. Where they referred to the Volvo Group magazine, which stated that the product had several patented features that make the drive stand out that are not claimed in this patent. Yes. Yes, and so there was a statement in that Volvo Group magazine from a business person. It was marketing. It was a marketing piece, primarily. So the board had that evidence. But the board had other evidence in front of it. First, they said there was nothing in the patent that was unclaimed. The second was that there was discovery, which is a little odd in an IPR case. The parties actually conducted some discovery between them. One of the pieces of discovery that came out was that Brunswick had asked if we had done an analysis of patents that covered. Stop. You said there's nothing in the patent that is unclaimed. First, you either misspoke or that's completely false. I'm sure there are many things in the patent itself that are unclaimed. There's a whole background section that probably aren't claimed. But so did you misspeak? Did you mean to say there's nothing in the product that is unclaimed? Or what was it you were trying to say? So in the patent, the things that are disclosed as being part of the invention are all claimed. It's a fairly straightforward. Yes, but that's not the question of coextensiveness. The question of coextensiveness is, is the product being sold coextensive with the patent claims? And in our Fox Factory case, we've expressly indicated that if there are lots of features that make this thing valuable that are not part of what's claimed, then that's a problem for coextensiveness. Critical unclaimed features in the device. Yes, I agree. That's what Fox Factory says. And so the place. That's the problem. I'm sorry. Go ahead, your honor. No, that's OK. That's the problem you have. Right. And so Fox Factory, there were features about that chain mechanism for, I think it was a bicycle chain. But there were features about that chain that were in the specification that were unclaimed. And so there was evidence there. Here, there aren't features that are inventive or that are describing a forward-facing drive that aren't claimed in the patent. It's a very straightforward sophistication, very minimal claims. And so the only evidence on the record that there are additional unclaimed features is that Volvo Group article that you already mentioned. What do we mean by features? Are they results? Or are they components of the claim? The latter, the components. The feature that the board focused on particularly. Well, that works against you. Pardon me? That works against you if they're components. OK. The specific component that they listed on Appendix 67 was exhaust. They also found at pages 55 through 58 in a couple places that the exhaust and the way that the exhaust is put together in one of these drives is well within the knowledge of skill and the art. And so those are contradictory. The idea that the exhaust under the Fox factory case has a material impact on the invention. And yet the board also found that one of the skill and the art at the time would have known exactly how to put the exhaust together. So I think as the board looked at those, they canceled each other out in a manner of speaking. The board didn't consider the fact that one of the skill and the art would have known about these features. And then there was other evidence in the record that the board ignored. OK. All of this goes to co-extensiveness. And Lester's already has more questions. Can I move you to the question of nexus? Because you don't have to get the presumption you could establish nexus. Is it OK if I move that issue? Could you move to the question of whether or not you establish nexus independent of whether co-extensiveness was established and therefore you are entitled to the presumption? We established that the demand for the product was based on the patented features, which is the forward-facing stern drive with the steering axis in front of the vertical drive shaft. And so we relied on expert testimony to show that those features were there. And then we had evidence in the record, such as the copying by Brunswick of our product, the specific aspects that they copied. We had, again, the features of the stern drive, for the most part, would have been known by one of skill and the art. The novel part of it was it was a forward-facing drive with that steering axis before the vertical drive shaft. There's no dispute that all the other features were features that one of skill and the art could figure out if they were trying to develop one of these drives. I mean, I guess for me, I thought your strongest evidence of nexus might be Brunswick's own internal documents, the one that that's at 4521 to 23. So that, to me, clearly implicates the steering axis location. And you're referring throughout to your claim forward-facing propeller. So yeah, I have been struggling with the district court's conclusion of no nexus in this case. I also think, in addition to that, the APPX 198 and 199, it's sealed. It's part of the evidence of copying. That evidence is also extremely telling about what it was they were trying to do when they created their copycat product. They had our drive, and they used the features of our drive to develop their drive. So I think all that, that shows the nexus between not only, it's a nexus as far as what our competitor thought, which I think is very telling. But also, it tends to show what the important parts of the invention were as far as the public praise. And so, I mean, the district court did find, as you wished it would, that there was evidence of copying. It preferred Brunswick's own internal documents over the other evidence that you tried to offer on your own. Your argument there, it mainly seems to be about the weight it then gave that evidence. Is that accurate? It is. It is. I think that the issue that we raise is the fact that in its decision at appendix, for instance, appendix 82 and 83, and it's referring to APPX 4494 through 496, their industry statement. So we went to a boat show with the drive, and the people at the boat show said we had the most innovative stern drive at the boat show, which is praise, and it's certainly positive. Where do they say that? Is that that document that uses the word revolution, or is that something different? I don't know exactly what. It's 4494 through 4496. I don't remember exactly the statement that I'm referring to. I pulled the, let's see if I can find it. So 4494 is the Volvo Penta 4 Drive Wins Innovation Award at the Miami Boat Show. And then 4496 is the article, it's basically talking about the same thing, but it's in an industry publication. So that's the industry praise. The board gave that some weight, and then it turned to our evidence of copying, and also gave that some weight. It appears to have equated the two. Based on the clear evidence of copying, I don't think there could be any argument that there wasn't copying. And the case we decided was a Panduit case. Now you were taking issue with the board's analysis of secondary considerations. What additional analysis or detail did you want the board to pit for? So it's not just the secondary considerations. We were also, the additional detail that I would have liked the board to have taken into account were the Krusty Drive demonstrator. I feel, we feel the board erred, legally erred in the way it approached it. It looked at the Krusty Drive and it said, well it doesn't support our obviousness case, and so it ignored it. The argument we made is the fact that Brunswick took our prior grant drive, based on the prior grant reference, and tried to make a working, an operable stern drive is the term that they used, and failed, is evidence that it wouldn't have been obvious. All the board did is they said, well this doesn't support us, it's not required, and so we're not gonna consider it. The other piece of evidence that the board looked at and dismissed was the complexity. They said the sheer number of modifications is not relevant, and that's not true. I think the case we decided was the Huxma case. It says that the complexity of the invention can be a factor that weighs towards not obvious, to not combine the references, but the board said that that was irrelevant. We talked about the actual reason why people were motivated to make the combination. It has to do with wake surfing, you're sort of getting the prop under the boat instead of behind the boat. We talked about that, and the board said, it relied on the Alcon case. It said, well the Alcon case says that we don't have to limit our review to just what's in the patent. That's actually talking about the patent that's being challenged. Our argument wasn't that they have to look at anything specific. They looked at Keikai for a motivation to bind. Our argument was that the fact that we had evidence in the record that folks didn't actually use that motivation, that that wasn't a motivation, is evidence of non-obviousness, but the board refused to look at it. They found it irrelevant. And then the other one was the age of the reference. So the Keikai for reference, the secondary reference here is 70 years old. It's not only 70 years old, but it's owned by Brunswick. So Brunswick had that patent for, I guess, 52 to 2014, so 50. Didn't the board discuss the age of the reference in respect to at least one of the secondary considerations? Was it failure of others? Is that true? So what the board did is they said, they looked at the age, but then when we present the remainder of the evidence, and they said the evidence didn't show a long-felt need. And so they dismissed all the context around the reference. So they dismissed the fact that it was Brunswick's reference. They dismissed the fact that it was, that nobody ever used it. There was evidence, there was no evidence in the record that Brunswick had ever commercialized that drive. There was no evidence in the record, although we had evidence about the way the drive was created. Did you argue the passage of time evidence with respect to long-felt need? Like I see that the board talks about it in the failure of others section. I'm just wondering if it were argued in that context of long-felt need as well. Yes, although to be fair, I'm not sure it comes across as clearly in the briefing as we'd like, but yes, we did. We said there's a whole context around this drive, and around the fact that each of the prior references on which the board rely are owned by the parties themselves. And so the board whittled away all that evidence around it, and then they said the mere age is not persuasive. So our main complaint, I think, is really less related to secondary considerations, which I realize a lot of that is more of a factual determination. It's the process the board went through. It's how the board took pieces of evidence and then dismissed them entirely, or the way they went through and said, there's a line that they use often in the final written decision. They say, quote, this argument does not identify deficiency in petitioner's position. So it's in appendix 44, 47, or 49. You are almost out of all your rebuttal time. Do you want to save some? Yeah, I would, actually. All right, thank you, Your Honor. Good morning, Your Honors, and may it please the court. Kevin Richards for Intervenor, the Director of the USPTO. The board issued a thorough, well-reasoned, 118-page decision, concluding that claims 1 through 18 of the 692 patent would have been obvious over the Brandt and Kieckhofer references. Its factual findings are supported by substantial evidence, and its legal conclusion was correct. Mr. Richards, about secondary considerations. The board found that commercial success and laudatory praise of the industry and an award were all entitled to some weight, S-O-M-E. Doesn't sum plus plus sum plus sum give us a sum, S-U-M, really amounting to substantial evidence of secondary consideration supporting non-obviousness? It might, in the proper case, Your Honor. They all add up, don't they? Certainly, all of the evidence of secondary considerations are part of the totality of the evidence that the board looks at when determining whether a claim would or would not have been obvious. But whether there was some evidence of commercial success or copying also goes into consideration with the strength of the petitioner's evidence regarding whether the claimed invention would have been obvious. Before we get to secondary considerations, I'd like to note that that was an alternative finding by the board. Their primary finding was that there was no nexus between the claimed invention and the forward drive product. And they went on to consider the evidence of secondary considerations in the alternative. So the court doesn't need to reach the evidence of secondary considerations to affirm in this case because Volvo Penta didn't present any evidence that the claimed invention was coextensive with the forward drive product. But you don't have to prove coextensiveness to establish nexus, right? I mean, coextensiveness gets you a presumption of nexus, but you can independently prove nexus. Yes, that's correct, Judge Moore, Chief Judge Moore, pardon me. There can be unique characteristics that drive the secondary considerations that leads to proof of nexus. But the board also found that Volvo Penta presented only two sentences of argument regarding these unique characteristics and did not identify unique characteristics to the 692 patent until its surreply. And those arguments were not supported by any actual evidence in the record. And so the board, because there was no coextensiveness, rejected the presumption of nexus and then also found that Volvo Penta did not prove unique characteristics. And both of those findings are supported by substantial evidence. And even on appeal, Volvo Penta has not pointed to any evidence in the record of unique characteristics that drive the secondary considerations here. I understand, the unique characteristic is the forward-facing drive. Isn't it the location of the drive? So Volvo Penta didn't say that in the IPR. They actually did in the Patent and Response at page 626, why don't we take a look. Sure. So on page 626, when they say further secondary considerations here are, are you with me? Yes, yes. Okay, I just wanted to make sure. The direct result of the unique characteristics of the claimed example, for example, Brunswick recognized that the success of Volvo Penta's forward drive was tied to the claimed features, namely a steerable tractor drive as recited in each of the challenge claims. And they cite this exhibit. What do you think that exhibit is? I believe that is the internal Brunswick documents. Yeah, it is. Why don't we turn to 4521, which is where you'll find that. 4521 is all about the location of the forward-facing drive and why it's important. So when they're referring to unique characteristic, look at 4522, mark it. Why is an FFD necessary? And then it goes on to show how the location of the propeller relative to the surfer is really important. So I think, unless I'm mistaking, that their patented response says quite clearly that the nexus is because of the unique characteristics that are driving the objective evidence and expressly points to the forward-facing location. And I think that's what they meant when they talked about the steerable tractor-type drive. As far as unique characteristics, Your Honor, that forward tractor-type drive is something that the patent, the 692 patent, admits as part of the prior art. If you look at Appendix 372, there is a forward-facing drive illustrated and it's explicitly labeled as part of the prior art. And indeed, if the court looks at the context of the patent as a whole, it appears that to the extent you can determine the focus of a patent, it is on the shift in the steering axis. Right, the steering access location is clearly implicated. They talk about a steerable tractor-type drive, which is what they say is their claim to dimension. They point to these pages, which I think incorporates all of that into their analysis, right? They're referring, isn't Volvo referring to the forward-facing propeller, which clearly implicates the steering access location? Respectfully, no, I don't think it clearly implicates the steering access location. And to the extent it implicates the steering access location, that angled steering axis is taught in the Brandt reference. Indeed, Volvo Penta did not dispute before the board that every limitation of Claim 1, the only claim separately argued on appeal, is present in the references. It only disputed motivation to combine the references and argued secondary considerations. And so, and certainly there's substantial evidence for that finding that these characteristics are not novel. Volvo Penta's counsel, I believe, stated that the novelty of the patent was this forward-facing drive, but it's explicitly shown in the patent to be in the prior art, and indeed a product that Volvo Penta debuted more than 10 years before it debuted the forward drive. I guess I'm confused. The Brunswick internal documents stating the forward drive success was because of the location of the propeller relative to the surface. Isn't that what's claimed? Isn't that the claimed feature? It is, it's correct that the drive is forward-facing and that it is in a different location. Forward-facing drive, and what's important is the location of the propeller relative to the surface. That is what the Brunswick document says, Your Honor, and the, to the, of course. And that's the claimed information, which are the unique characteristics that they say are driving the secondary considerations in the patent or response. That. I'm confused, what am I, I obviously am missing something. It's not the unique characteristics that Volvo Penta is arguing, and that it's referencing in this, in its patent owner response are present in the prior art, that there's no novelty in that unique characteristic. And to the extent that there might have been anything in the combination of the features, there's, that also is present in the prior art. The patent is directed to the location of the steering axis, which also is not, does not implicate the facing of the drive. The steering axis being angled is independent of where the propellers are in the drive. And the Brandt reference teaches that same steering axis with the propellers facing backwards. So that part of the invention is not implicated by the location of the propellers. Because the way that the patent works in the same way that the Brandt reference works is that you balance the forces between the propellers turning and the force of the water hitting the gear casing. And so that operates independent of the way that the propellers are facing. Even to the extent that there are unique characteristics tied to the claim features, the board. I just feel like, so I'm sitting here very confused, and I'm just asking my clerk to try and explain it, and he says that everything you're saying now is brand new. So is this, is what you're saying now what the board actually found? So the board found, to the extent that any of it is brand new, I'm attempting to answer your Honor's questions. But what the board found. Okay, but so the important thing to me is, I mean, because what you're saying, you might be right. But that doesn't feel like what you're saying is echoed in the analysis the board gave for why there's no nexus. Certainly, Your Honor. And that's what's troubling to me. Because I'm sitting here thinking, I mean, as you're saying it, you're sounding really smart. I'm very convincing. So good on you, but if that's not what the board said, then your level of smartness can't replace their level of analysis. Certainly. Despite their 118 pages. Certainly, Your Honor. So the board's analysis is at Appendix 72, Appendix 197 of the non-public decision. Say it again so I can find it. Yes, Your Honor. What page? Appendix 72. The one that doesn't have any redactions. It's, I'm sorry, it's Appendix 72 of the public version that does have redactions. It's 197 of the version that does not have the redactions, the non-public version. All right, 197, yep. Yes, so in Note 19, in the SIR reply, the patent owner states that the inventive combination of the, yes, the inventive combination of propeller arrangement and steering axis location reduces steering torque, alters the center of pressure, and achieves greater maneuverability in a wider range of boat types. The combination of benefits not achieved by drives in the prior art and recognized throughout the industry praise. Even assuming this discussion is timely, it doesn't support this assertion with any evidence of record as to, for example, how one of ordinary skill in the art would have understood the disclosures discussed. So, and citing to patent owner's SIR reply, to the extent that this portion of the patent owner response argues those particular claim features, it appears that Volvo Penta did not continue to rely on that articulation of unique characteristics and turned to a different articulation of unique characteristics in its SIR reply. And so the board addressed the arguments that was made to it and determined that these unique characteristics were not adequately tied to, or there was not sufficient evidence that the unique characteristics, such that they are, are tied to the secondary considerations. And indeed, there's evidence that there are other features not claimed that are part of the reason for any sort of secondary considerations. And that's in the Volvo Group article at Appendix 1735, where the Volvo Penta itself says that the drive, quote, includes several patented features that make the drive stand out. For example, the Volvo Penta US team piped the engine exhaust through the drive. I guess my problem is this footnote that you're pointing me to. It seems to me it doesn't refute what was said in the patent owner response and the evidence related to the drive location. There is evidence related to the drive location. It's Brunswick's own documents that the patent owner response points to. And so this argument, and the board didn't address the drive location. Where did the board address the drive location and say that was in the prior art? That is, so as I mentioned, Volvo Penta, the patent concedes that the drive location is in the prior art in figure two of the patent. And then in the final written decision, that is, so there, on Appendix 30 or of the non-public version, Appendix 155, that's the preamble, a steerable tractor-type drive for a boat. A tractor-type drive is the pull-type drive like the claimed invention. Okay, now, I mean, obviously I will dig in more to your arguments respectfully to the extent that I don't think that they are fully fleshed out in the board's actual analysis. And I feel like some of them are more creative and detailed than what I actually got from the board's opinion. What would you recommend I do at that point in time? So to the extent that the court disagrees and is inclined to believe that the evidence supports that there is a nexus between the claimed invention and the forward drive, then it can proceed to the board's alternative process, which was to evaluate the evidence of secondary considerations. Yeah, but that's the problem, is I feel like that's actually flawed. For example, copying. Copying is supposed to be strong evidence. There's no doubt there's copying. The board found there was copying based on Brunswick's own internal documents. That being said, the board said, we'll just give it, quote, some weight. That was the exact same amount of weight they said they were gonna give commercial success, but some weight is not strong evidence. And when it came to commercial success, they explained all the reasons why it was only entitled to some weight because there was sort of evidence on both sides, it wasn't so clear, but the board concluded it was clear that Brunswick copied from its own internal documents, full stop. They said that evidence was much clearer evidence of copying than the alternative evidence that plaintiffs submitted, but that alternative evidence didn't diminish the fact of copying. So you have a fact of copying, which our law says is strong evidence, and then you have the board saying it's only entitled to some weight, which is the same amount of weight they gave to other things where it was questionable, where it was less strong. You follow what I'm saying? I'm following, yes. And so I'm struggling with that. I'm not saying that this invention is unobvious, nor am I saying that these secondary considerations outweigh a strong prima facie case, but I do find some flaws in what I perceive to be the board's analysis of the secondary consideration evidence. So do you wanna respond to that specific flaw or do you wanna talk? And also, if you could, tell me what you think I ought to do. Like, I'm just not sure what to do with this case, given, I mean, like, I'm pretty much putting it all out there for you. You know exactly where I am. So how do I handle the case, given that? Yes, Your Honor. I think, I guess, a broad comment and then some specific comments. So first, I think it is important that the weight that the board gives to these secondary considerations is substantial evidence review. And so it's, is there more than a scintilla of evidence, as Your Honor is well aware, to support the board's findings here. And- But there's no evidence with regard to weight. They say the internal documents of Brunswick established copying, full stop. They don't like the other evidence, so they rely on that. Nowhere do they say, ah, but it's not so clear they didn't copy. You know, like, nowhere do they find an issue with the copying. And so they gave the evidence of copying some weight. But our precedent says strong evidence. Well, the precedent does not uniformly say strong evidence. For example- No, if there are questions about the copying. But here, there are no questions. But the- Just like in the commercial success contest. They said, that's what's bothering me, is they gave it the exact same amount of weight that they gave to a different factor that they had issues with. They didn't have any issues with this factor. This factor, clear. They had, they had some issues with some of the evidence, I think. Not to the extent that they thought it disproved copying, but they thought that the copying occurred at the beginning when Brunswick was attempting to start the design of its product. Volvo Penta also argued that the copying was reflected in the final product that resulted. The board assumed, and Dr. Winkle, Volvo Penta's expert, pointed to five similarities between the two. And the board assumed that those similarities were due to copying, but seemed to suggest that they were not convinced that those similarities weren't inherent to any forward-facing drive. Locations of different features, things like that. And also evaluated the marketing and praise for both Volvo Penta's drive and Brunswick's product, and looked at those and didn't think that that was as indicative of copying. So although- Well, I mean, that was another problem for me in the long-felt industry praise, long-felt need area. I feel like the board completely messed that analysis up. And I mean, you've got Brunswick documents and other industry documents saying that this Volvo product was revolutionary. I mean, that's really strong language. Like, that's really strong evidence. And yet the board didn't treat it as though it were strong evidence. They're like, yeah, I feel like they had a strong prima facie case, but even a strong prima facie case could potentially be overcome by objective considerations. And I feel like once they got to the objective considerations, this opinion for me reads like it was already cooked. Well- And I'm not saying they can't come out exactly the same way, but I feel like they have to legitimately go through each of those factors. Your Honor, the board did go through, step through each of those factors, discussed all the evidence that Volvo Penta presented. 16 pages looking at each of these factors, weighed each one, determined how much weight to give to it. Those are all findings subject to substantial evidence review. As far as long felt need goes, the only argument, skepticism, long felt need, failure brothers, the only arguments Volvo Penta presents regarding those factors on appeal is that the board didn't adequately explain them, not that the board was wrong or unreasonable. And looking at those specific factors, long felt need, there's no evidence in the record of a need for this product, or excuse me, a need for the claimed invention before the filing of the patent. There's no evidence of failure of others before filing of the patent. The only evidence that Volvo Penta points to is the age of the references. And this court's precedents are clear that age alone is not enough. There needs to be- Well, to be clear, I feel like you're not exactly right. 3712, which is the reference at issue, the board just seems to have completely misapprehended that evidence. It discussed industry publication and finds the evidence doesn't support there was a need for a better water sports platform, full stop, that's all they say. That publication specifically points to the fact that Stern Drive manufacturers could not, quote, enjoy serving a water sport market, end of quote, but that the inboard drive manufacturers could because of the location of the propeller. And again, I hate to say it, but I don't see any evidence where the board rejected the location of the propeller as part of the nexus. So I don't know. We're way beyond, if you have a closing thought, I'm happy to hear it. It's not like I think the board's decision is all wrong and I didn't even let you get to the prima facie case because I don't think there's anything wrong with it, so you didn't have to. I forced you to address the issues I was concerned about. I don't speak on behalf of everybody, but I feel like if they really wanted to hear you on that, they would have jumped in. So don't, you know, I hope you're okay about that, but if you have any final thoughts, we're happy to hear them. Yes, Your Honor. Very happy to focus on what is of most concern to the court, of course. The final thought would be each of the board's, the board's weighing of these secondary considerations is reviewed for substantial evidence. I understand the court's concern about copying, but for the other factors, there's, it's our position for all of the factors. I think they completely misapprehended the Longfelt Need evidence, so I don't think there is substantial evidence for what they said. For Longfelt Need? Your Honor, the- They cite 4522, 4523, 4543, all that was cited to the board. None of it is sort of adequately explained to me anyway, but in any event, maybe it's a message, maybe it's a matter of needing explanation, but it seems like pretty strong evidence. It, the, those secondary considerations aren't adequately tied to the claimed invention because there's evidence, the Volvo Group article, that there are other unclaimed features that drive these secondary considerations, specifically the exhaust, which is praised. The board didn't say that. It did say that there- Not in the Longfelt Need section. It said that in the Nexus section, and so there'd be no Nexus, and so therefore no reason to get to the secondary considerations. Okay, I have your argument, thank you. I let him go over by a ridiculous amount of time. Please don't take all that same amount of time. I promise not to do that. I just have three quick points. One is on the copying, the appendix 199. Should be strong evidence of copying. They took our drive, they bought our commercial embodiment, they took it apart completely, and then they weighed and measured every part. That's at appendix 199. That's strong evidence of secondary considerations of copying. The only other issue I want to make, and I feel like it's almost like two ships passing in the night, but in relation to the motivation to modify the drive, the board found that evidence irrelevant and didn't consider it in its analysis. That's the response to page 20, Brunson concedes this. There's no brief from the director. So they've ignored evidence in this record. And then on appendix 0059, we raised the point that the modifications would be very complex, and the board said we see no reason that this year- Did he address any of this? I'm sorry? Did he get to address, or did he address any of this in his argument? So he said that the board had substantial evidence for every factor, and then they- All right, fair enough. Go ahead then. Yeah, and so my only point is that they didn't follow along the way that they had analyzed, and that was the only other point I wanted to make. Thank you for your consideration. I thank both counsel. This case is taken under submission.